UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARIKA SAWER, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

ARLOZOROV9, INC., d/b/a ALMA,

Defendant.

Case No.: 1:26-cv-00732

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

MULLEN COUGHLIN LLC
411 Theodore Fremd, Ste 206S
Rye, New York 10580
(267) 930-1254
jlisogorsky@mullen.law

*Attorneys for Defendants*

Dated: Rye, New York
March 31, 2026

# TABLE OF CONTENTS


I. Preliminary Statement .......... 1

II. Factual Allegations .......... 1

III. Legal Standard .......... 3

IV. Argument .......... 4

- A. Plaintiff Does Not Have Article III Standing .......... 4
- B. Plaintiff Fails To State A Claim Under the Federal Wiretap Act. .......... 6
  - 1. The Interception of "Contents" .......... 7
  - 2. One- Party Consent Rule .......... 10
- C. Plaintiff Fails To State A Claim Under CIPA .......... 13
  - 1. § 631 .......... 14
    - a. The "First Clause" .......... 14
    - b. The "Second Clause" .......... 15
    - c. The "Third Clause" .......... 17
    - d. The "Fourth Clause" .......... 18
    - d. The "Party Exception" .......... 18
  - 2. § 632 .......... 20
  - 3. Statute of Limitations .......... 22
- D. Plaintiff Fails To State A Claim Under CMIA .......... 22
- E. Plaintiff Fails To State A Claim For Invasion of Privacy .......... 26
- F. Plaintiff Fails To State A Claim For Intrusion Upon Seclusion .......... 27

V. Conclusion .......... 28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*,
No. 22-CV-5612 (JGK), 2025 WL 2346377 (S.D.N.Y. July 3, 2025) ... 21

*Ashcroft v. Iqbal*,
556 U.S. 662, (2009) ... 3, 4, 16

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ... 22

*Barbour v. John Muir Health,*
No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023) ... 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 3, 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ... 5

*Cohen v. Casper Sleep Inc.*,
No. 17CV9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018) ... 11

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ... 6, 7, 10

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ... 24, 25

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal., October 24, 2023) ... 15

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ... 15, 16, 26

*DellaSala v. Samba TV, Inc.*,
No. 3:25-CV-03470-JSC, 2025 WL 3034069 (N.D. Cal. 2025) ... 13

*Doe v. Eating Recovery Center LLC,*
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ... 16

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ... 8, 22

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ........ 12

*Eisenhower Med. Ctr. v. Superior Court*,
226 Cal. App. 4th 430 (2014) ........ 24

*Gabrielli v. Insider, Inc.*,
No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ........ 5, 6, 27, 28

*Gay v. Garnet Health*,
No. 23-CV-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ........ 13

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ........ 8

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 16, 18, 27

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ........ 20

*Harrill v. Emanuel Med. Ctr.*,
No. 2:23-CV-01672-DC-CKD, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ........ 24

*Hill v. Workday, Inc.*,
No. 23-CV-06558-PHK, 2024 WL 3012802 (N.D. Cal. June 14, 2024) ........ 23

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098, 1106 (9th Cir. 2014) ........ 8, 9

*Indep. Bankers Ass'n of New York State, Inc. v. Marine Midland Bank, N.A.*,
757 F.2d 453 (2d Cir. 1985) ........ 3

*Jane Doe v. Call-On DOC, Inc.*,
No. 24CV2095-GPC(KSC), 2025 WL 1677632 (S.D. Cal. June 13,2025) ........ 17

*J.C. v. Cath. Health Sys. Inc.*,
No. 1:23-CV-00796(JLS)(JJM), 2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ........ 13

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 15, 19, 22

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, (1992) ........................................................................................................ 4

*Lyons v. Litton Loan Servicing LP*,
158 F. Supp. 3d 211 (S.D.N.Y. 2016) ........................................................................... 3, 4

*Martin v. Sephora USA, Inc.*,
No. 1:22-CV-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)....................... 18

*Mike Goldstein v. Rumble Inc.*,
No. CV 25-06304-MWF (SKX), 2025 WL 3691987........................................................ 19, 20

*Moss v. ResortPass Inc*,
No. 24CU023415C, 2025 WL 3452360 (Cal.Super. Oct. 30, 2025)................................. 20, 21

*Pattison v. Teladoc Health, Inc.*,
No. 23-CV-11305 (NSR), 2025 WL 1756364 (S.D.N.Y. June 25, 2025).......................... 11, 13

*Popa v. Microsoft Corp*,
153 F.4th 784 (9th Cir. 2025) .............................................................................................. 6

*Regents of Univ. of California v. Superior Ct*,
220 Cal. App. 4th 549, 163 Cal. Rptr. 3d 205 (2013) ........................................................ 25

*Spiegel v. Estee Lauder Inc.*,
No. 24-2089, 2025 WL 1288019 (2d Cir. May 5, 2025)......................................................... 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................................ 4, 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................................................ 5

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........................................................................... 14, 19

*Vigil v. Muir Medical Group IPA, Inc.*,
84 Cal.App.5th 197 (2022) ................................................................................................ 25

*Wang v. Marziani*,
885 F. Supp. 74 (S.D.N.Y. 1995) ....................................................................................... 26

*Warth v. Seldin*,
422 U.S. 490 (1975) ............................................................................................................ 4

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024).......................... 12

**Statutes**

18 U.S.C. § 2510(12) ........................................................................................ 7

18 U.S.C. § 2511(2)(d) ........................................................................................ 10

18 U.S.C.A. § 2510(8) ........................................................................................ 7, 9

Cal. Civ. Code § 56.05 (j) ........................................................................................ 23

Cal. Civ. Code § 56.10 (a) ........................................................................................ 22

Cal. Civ. Code § 56.10 (d) ........................................................................................ 22

Cal. Civil Code § 56.36(b) ........................................................................................ 25

Cal. Penal Code § 631(a) ........................................................................................ Passim

Cal. Penal Code § 632(a) ........................................................................................ 20

Cal. Penal Code § 632 (c) ........................................................................................ 20, 21

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................ 3

Federal Rule of Civil Procedure 12(b)(1) ........................................................................ 1, 3

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 1, 3

Defendant Arlozorov9, Inc. d/b/a Alma ("Alma") respectfully submit this memorandum of law in support of its Motion to Dismiss Plaintiff Sharika Sawer's ("Plaintiff") First Amended Class Action Complaint (the "Complaint") pursuant to (1) Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and (2) Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth herein, the Court should grant the relief requested in the Motion.

## I. PRELIMINARY STATEMENT

Alma operates a platform which hosts a diverse network of mental health care providers committed to offering the highest quality of care. Alma acts as the intermediary between individuals seeking mental health treatment and the providers/payers through its website, helloalma.com ("Website"). This matter stems from Alma's role as a business associate for its payors and providers whereby Plaintiff alleges Alma's Website allows for the improper interception of personally identifiable information ("PII") and/or protected health information ("PHI") through Google Analytics and discloses this information to a third-party, Google.

As discussed herein, the Complaint should be dismissed for lack of subject-matter jurisdiction since Plaintiff does not have Article III standing and for failure to state a claim under the Federal Wiretap Act, the California Invasion of Privacy Act ("CIPA"), the California Confidentiality of Medical Information Act ("CMIA"), for invasion of privacy under California's Constitution, and for intrusion upon seclusion.

## II. FACTUAL ALLEGATIONS

Plaintiff is a resident of California and is bringing this suit on behalf of herself in addition to a class and subclass. She alleges she visited Alma's Website on or around April 3, 2024, using a browser that she has used to access Google's products and services. Compl. ¶ 7. Once on the

Website, she scheduled a consultation for individual therapy wherein she allegedly provided her medical information, including information related to her medical condition, history, and treatment. *See id.* at ¶ 8. Plaintiff alleges the Website allowed for Google via "Google's wiretaps" to intercept information users provided to schedule a therapy consultation such as "the type of therapy they are looking for, areas they want to focus on (*e.g.*, depression), the approach they want their provider to take in therapy (*e.g.*, confronting trauma), preferences as to their provider's identity (*i.e.*, their provider's faith, gender, race, and/or sexuality), where they are seeking therapy, whether they are seeking virtual or in-person care, how they plan to pay, the name of the provider with whom they select to book a consultation, and the fact that patients actually booked a consultation." *See id.* at ¶¶ 9, 33. The alleged interception of users' PHI and PII occurs when users enter and interact with questions and prompts on the Website. *See id.* at ¶ 34.

The Complaint provides a presumed exemplar of the alleged interception of Website users' information through the "Find a therapist" feature on the Website. *See id.* at ¶¶ 35-50. As illustrated in the Complaint, Plaintiff provides screenshots that allegedly demonstrate Google's interception of the communications users exchange with the Website, including Google's deidentification of the alleged PII and PHI provided by users via cookies and reCAPTCHA. *See id.* at ¶¶ 58-83. Plaintiff does not allege whether she used the reCAPTCHA or identified the presence of these cookies during her visit on the Website on April 3, 2024. Regardless, the basis of Plaintiff's Complaint is that "Google, as [allegedly] installed and integrated by Defendant, contemporaneously intercepts Website users' button clicks". *See id.* at ¶ 34.

Furthermore, Plaintiff alleges Alma "assisted these interceptions without Plaintiff's knowledge, consent, or express written authorization", which amounts to an unlawful disclosure of PII and PHI and is a breach of confidentiality. *Id.* at ¶10-11. The Complaint does not contain

any allegations related to any treatment obtained by Plaintiff through the Website or any actual personal injury or economic harm suffered by Plaintiff (*i.e.* monies paid for Alma's services). Rather, Plaintiff asserts a claim for damages based on the alleged violations of the Federal Wiretap Act, CIPA, CMIA, and the alleged egregious nature of unauthorized disclosures of "private medical communications". *See id.* at ¶¶ 129, 146, 160, 176, 183-84, and 190-91. Consequently, the Complaint is made up of a federal claim along with state claims.[1]

## III. LEGAL STANDARD

A challenge of a plaintiff's standing is appropriately addressed through a Rule 12(b)(1) motion. *See Lyons v. Litton Loan Servicing LP,* 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016). Unlike a 12(b)(6) motion, a court is not restricted to the pleading to resolve a 12(b)(1) motion, but a court "may consider evidence outside of the pleading to determine whether a plaintiff has established subject matter jurisdiction by a preponderance of the evidence." *Id.*

While a court's review of a motion to dismiss pursuant to Rule 12(b)(6) is limited to a plaintiff's complaint where a court must determine whether the facts pled are "enough…to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Also, a complaint must meet the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), where the complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." As further clarified in *Ashcroft v. Iqbal*, "the pleading standard Rule 8 announces does not require 'detailed factual allegations'…[but a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint

[1] Alma contends the Court's discretion to exercise pendent jurisdiction based on relevant factors. *See Indep. Bankers Ass'n of New York State, Inc. v. Marine Midland Bank, N.A.*, 757 F.2d 453, 464 (2d Cir. 1985) ("The factors to be weighed in the district court's discretionary decision [of pendent jurisdiction] are judicial economy and convenience, fairness to the parties and the degree of uncertainty in the relevant state law.") (internal citation omitted).

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' 556 U.S. 662, 678, (2009) (internal citations omitted).

Consequently, to survive a motion to dismiss, a complaint must plead facts that "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lyons*, 158 F. Supp. 3d at 218 (internal quotation marks and citations omitted); *see also Spiegel v. Estee Lauder Inc.*, No. 24-2089, 2025 WL 1288019, at *1 (2d Cir. May 5, 2025) ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint must be dismissed.") (internal quotation marks and citation omitted). A court will "accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* (internal citation omitted). The court, however, is not "bound to accept as true a legal conclusion couched as a factual allegation". *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

## IV. ARGUMENT

### A. Plaintiff Does Not Have Article III Standing.

To establish standing, a plaintiff must plausibly allege: (1) an injury in fact, (2) fairly traceable to the defendant's conduct, and (3) that is likely to be redressed by a favorable decision from the court. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). During the pleading stage, the plaintiff must "clearly [] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin,* 422 U.S. 490 (1975). Moreover, "[t]hat a suit may be a class action [] adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo,* 578 U.S. at 338, n.6 (internal citation omitted).

Here, Plaintiff has not pled sufficient facts to satisfy the element of an injury in fact. Plaintiff's allegations are conclusory and her alleged harms are neither concrete and particularized, nor actual or imminent. As alleged, Plaintiff's alleged suffered harms are conjectural given the lack of facts pointing to anything specific. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992). Furthermore, to establish an imminent injury in fact the "threatened injury must be *certainly impending* and *allegations of possible future injury are not sufficient*". *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and citation omitted) (emphasis added). Even in the context of a statutory violation, a plaintiff bears the burden of establishing a concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Importantly, this Court has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.") (internal citation and quotation omitted); *see also Spokeo,* 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."). As such, Plaintiff cannot solely rely on Alma's alleged violation of the Federal Wiretap Act, CIPA, and CMIA, to establish Article III standing. *See TransUnion*, 594 U.S. at 427 ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."); *see also Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *3 (S.D.N.Y. Feb. 18, 2025). The absence of any allegations of an actualized or threatened injury in accompaniment with the allegations regarding the statutory damages owed to Plaintiff should result in a dismissal of the Complaint for lack of Article III standing. *See* Compl. ¶¶ 129, 146, 160, and 176. The lack of an actual injury also removes Plaintiff's standing to assert a claim for invasion of privacy and intrusion upon seclusion.

Plaintiff's Complaint fails to adequately allege an impact to a legally protected privacy interest. *See Gabrielli*, No. 24-CV-01566 (ER), 2025 WL 522515 (this District dismissed plaintiff's complaint since the collection of a plaintiff's IP addresses did not implicate a legally protected privacy interest sufficient to satisfy the injury in fact requirement of Article III standing. Nor did the plaintiff allege he suffered any observable loss because of defendant's conduct.). Although Plaintiff pleads that Alma disclosed personally identifiable information where there was an expectation of privacy, the Complaint, as pled, does not support a reasonable inference of same. The information allegedly captured and allegedly shared with a third party without Plaintiff's and class members' consent or authorization, were illegible website browsing activity that did not relate back to a specific user. As such, it is unjustified and unreasonably inferred that Plaintiff suffered a harm to her privacy. *See Popa v. Microsoft Corp*, 153 F.4th 784 (9th Cir. 2025) (The Ninth Circuit expressly held a website visitor did not have an expectation of privacy to her website browsing activity which was captured by Microsoft's tool and shared with Microsoft. The court ultimately held that the plaintiff had not identified any information that was disclosed which would create a privacy injury; finding the alleged monitoring by Microsoft were "most similar to a store clerk's observing shoppers" to identify popular items or spot problems. *Id.* at 791.). Accordingly, the Court should conclude that Plaintiff has failed to plead any cognizable privacy or concrete injury sufficient to establish Article III standing, and the Complaint should therefore be dismissed.

**B. Plaintiff Fails To State A Claim Under the Federal Wiretap Act.**

The Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, also known as the Electronic Communications Privacy Act or the "ECPA", "provides for a private right of action against 'any person who ... intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept wire, oral, or electronic communication.'" *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 378 (S.D.N.Y. 2024). To state a claim under the ECPA, a

plaintiff must plausibly allege defendant had the requisite intent to "intercept" a wire, oral or electronic communication. An "electronic communication" under the ECPA means:

> any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include--
>
> (A) any wire or oral communication;
>
> (B) any communication made through a tone-only paging device;
>
> (C) any communication from a tracking device [mobile tracking devices as defined in section 3117]; or
>
> (D) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds;

18 U.S.C. § 2510(12).

Here, Plaintiff alleges Alma violated § 2511 of the ECPA when it allegedly (1) "intentionally intercepted, and endeavored to intercept, the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential and sensitive PII and PHI of Plaintiff and Class Members [,] via the Website"; (2) "disclosed, and endeavored to disclose, the contents of the electronic communications of Plaintiff and Class Members"; and (3) "procured Google" to intercept these communications. Compl. ¶¶ 116-17. Plaintiff's amended Complaint still fails to allege facts to support a claim under the ECPA. As a matter of law, the Court should dismiss this claim because (1) Plaintiff fails to allege any facts supporting the occurrence of an "interception", intentionally or attempted, as defined under the ECPA and (2) Alma can rely on the one-party consent exemption provided under the law.

1. *The Interception of "Contents"*

For purposes of the ECPA, intercept means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Cooper*, 742 F. Supp. 3d at 378 (internal quotation marks and citation omitted). Furthermore, "contents", under the ECPA "includes any information concerning the substance, purport, or meaning of that communication". 18 U.S.C. § 2510(8). This District, has not provided

its position on whether web browsing activity such as a URL along with information related to accessing a specific webpage, clicking on links, and scrolling through a webpage amount to "content" for purposes of the ECPA. This Court should adopt the reasoning and position advanced by the Ninth Circuit and other courts that such information does not fall within the "contents" meant to be covered under the ECPA. *See e.g. Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025) and *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021). The Ninth Circuit held under ECPA, the term 'contents' "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Accordingly, the contents alleged by Plaintiff represent record information that cannot support Plaintiff's claim under the ECPA.

Plaintiff alleges the following information as the contents intercepted by Alma—"type of therapy they are looking for, areas they want to focus on (*e.g.*, depression), the approach they want their provider to take in therapy (*e.g.*, confronting trauma), preferences as to their provider's identity (*i.e.*, their provider's faith, gender, race, and/or sexuality), where they are seeking therapy, whether they are seeking virtual or in-person care, how they plan to pay, the name of the provider with whom they select to book a consultation, and the fact that patients actually booked a consultation". Compl. ¶ 120. This information is reflected in URL requests and button clicks. *Id.* The information (*i.e.* contents), as allegedly captured, are not readily decipherable unless additional steps are taken to obtain the information's true value. *See id.* at ¶ 62. An example, as provided in Complaint, is copied below. *See id.* at ¶ 59.

Request URL https://analytics.google.com/g/collect?v=2&tid=G-R0Z6J0E1GE&gtm=45je5991v9101100493za200zd9101100493&_p=1757599441881&gcd=13l3l3l3l1l1&npa=0&dma=0&cid=1714290763.1755718964&ul=en-us&sr=1920x1080&ir=1&uaa=x86&uab=64&uafvl=Chromium%3B140.0.7339.128%7CNot%253DA%253FBrand%3B24.0.0.0%7CGoogle%2520Chrome%3B140.0.7339.128&uamb=0&uam=&uap=Windows&uapv=19.0.0&uaw=0&are=1&frm=0&pscdl=noapi&_eu=EAAAAAQ&_s=1&tag_exp=101509157~103116026~103200004~103233427~104527907~104528500~104684208~104684211~104948813~105367987~105367989~105424848~105426769~105426771&sid=1757597854&sct=9&seg=1&dl=https%3A%2F%2Fsecure.helloalma.com%2Fproviders-landing%2F%3F_gl%3D1*1t69zz9*_ga*MTcxNDI5MDc2My4xNzU1NzE4OTY0*_ga_R0Z6J0E1GE*czE3NTc1OTc4NTQkbzkkZzEkdDE3NTc1OTk0MjUkajQ3JGwwJGgw&dt=Find%20a%20Therapist%20Who%27s%20Right%20for%20You%20-%20Alma&en=page_view&_ee=1&ep.ga_cookie_id=GA1.1.1714290763.1755718964&tfd=5636

dl https://secure.helloalma.com/providers-landing/?_gl=1*1t69zz9*_ga*MTcxNDI5MDc2My4xNzU1NzE4OTY0*_ga_R0Z6J0E1GE*czE3NTc1OTc4NTQkbzkkZzEkdDE3NTc1OTk0MjUkajQ3JGwwJGgw
dt Find a Therapist Who's Right for You - Alma
en page_view

As illustrated above, the information allegedly intercepted is not comprehensible, but even when translated with assistance from external sources, the information does not clearly articulate any identifiable PII and PHI, as set forth in the Complaint and copied below. *See id.* at ¶ 62.

---

https://secure.helloalma.com/providers-results/ca/out-of-pocket?filterables=c2VydmljZV9pbmRpdmlkdWFsJTJDc3BlY2lhbHR5X3YyX2RlcHJlc3Npb24lMkNzcGVjaWFsdHlfdjJfZ2VuZXJhbCUyQ3BheW1lbnRfb3V0X29mX3BvY2tldCUyQ3JhdGVfNCUyQ2lkZW50aXR5X2dlbmRlcl9ub25fYmluYXJ5JTJDaWRlbnRpdHlfZmFpdGhfY2hyaXN0aWFuJTJDdGVsZXRoZXJhcHlfcHJlZmVyZW5jZV9vbmxpbmUlMkNtb2RhbGl0eV9jb2duaXRpdmVfcHJvY2Vzc2luZ190aGVyYXB5JTJDbW9kYWxpdHlfZXllX21vdmVtZW50X2Rlc2Vuc2l0aXphdGlvbiUyQ21vZGFsaXR5X3Byb2xvbmdlZF9leHBvc3VyZV9wZSUyQ21vZGFsaXR5X3RyYXVtYV9mb2N1c2VkX2NvZ25pdGl2ZV9iZWhhdmlvcl90aGVyYXB5&lt=MzMuOTY5Nzg5Nw%3D%3D&lg=LTExOC4yNDY4MTQ4&ct=TG9zJTIwQW5nZWxlcw%3D%3D&st=Q0E%3D&from_guided_path=true&from_recommended=true

**Original Base64 transmission**

↓

service_**individual**%2Cspecialty_v2_**depression**%2Cspecialty_v2_**general**%2C**payment_out_of_pocket**%2Crate_4%2C**identity_gender_non_binary**%2C**identity_faith_christian**%2C**teletherapy_preference_online**%2Cmodality_cognitive_processing_therapy%2Cmodality_eye_movement_desensitization%2Cmodality_prolonged_exposure_pe%2Cmodality_**trauma_focused**_cognitive_behavior_therapy–Ó32ã"c"sƒ"pÜ=Ã–Ó,ã#CcƒC‡-**Los%20Angeles** ÃÜ

**Decoded transmission**

Notwithstanding the information's obscurity, this information should constitute record information because it does not allow for an inference concerning the "substance, purport, or meaning of a communication", 18 U.S.C.A. § 2510 (8), between a Website user and Alma. *See In re Zynga Priv. Litig.*, 750 F.3d at 1107-09 (the Ninth Circuit held that users' Facebook ID and the address of the webpage from which the users' HTTP request to view another webpage was sent were record information about a user's communication, not the communication itself; therefore, ECPA did not apply). As illustrated above, the patient communications alleged by Plaintiff are not replicates or screenshots of a user's interaction with Alma's website. *See* Compl. ¶ 84.

Rather, the alleged transmissions are request URLs that contain symbols and a combination of characters along with a reference of the page that the user is interacting with at the moment. Plaintiff expressly concedes that the alleged transmissions cannot be understood without employing external tools to decode or "translate" them. *See* Compl. ¶ 63. Because the information, at the moment of transmission, does not convey the substance or meaning of any communication, it cannot constitute "content" under the ECPA. Accordingly, no interception occurred, and Plaintiff's ECPA claim must be dismissed.

2. *One- Party Consent Rule*

Regardless of whether Plaintiff sufficiently pled facts to state a claim under the ECPA, the ECPA is a one-party consent statute, meaning an alleged "interception" by a party to the communication is not unlawful. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person . . . to intercept a . . . communication where such person is a party to the communication."). There should be no dispute as to whether Alma, as the Website operator, was a party to the communications at issue. As such, Alma's consent, if there was an interception of communications, which there was not, would foreclose Plaintiff's ECPA claim.

To rebut the consent rule, Plaintiff alleges the "crime-tort" exception provided under the ECPA, which negates the consent rule. The consent rule "does not apply where the 'aggrieved individual ... has had her oral communications intentionally intercepted by a party to those communications for the purpose of committing a crime or tort.'" *See Cooper*, 742 F. Supp. 3d at 378. Nonetheless, Plaintiff's assertion of the "crime-tort exception" is insufficient.

To successfully claim the exception, Plaintiff "must make sufficient allegations that support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent from the intentional act of recording*." *Pattison v. Teladoc*

*Health, Inc.*, No. 23-CV-11305 (NSR), 2025 WL 1756364, at *2 (S.D.N.Y. June 25, 2025) (internal quotation marks and citations omitted) (italics added). Furthermore, "[i]n the Second Circuit, the crime/tort exception is 'construed narrowly'. Under the exception, 'for the purpose' means that the crime or tort was the 'primary motivation' or 'a determinative factor' behind defendant's conduct." *Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877, at *3 (S.D.N.Y. July 12, 2018) (internal citations omitted).

Here, Plaintiff alleges Alma intercepted communications to commit a tortious or a criminal act in invasion of Plaintiff's and class members' privacy and in violation of CIPA, CMIA, and the Health Insurance Portability and Accountability Act ("HIPAA"). *See* Compl. ¶ 124. Plaintiff fails to sufficiently allege, however, at the time of the interception, Alma had the intent to knowingly disclose PHI and PII of users in violation of individuals' privacy rights or when Alma implemented Google Analytics on its Website. *See Cohen*, No. 17CV9325, 2018 WL 3392877, at *4 ("Courts further hold that a tortious purpose must be intended at the time of the interception, such that the commission of a crime or tort alone does not create liability.") (internal citations omitted); *see also id.* at *3 ("In analyzing the primary motivation of a recording, courts look to the purpose of the recording itself, not to the purpose of the underlying communications. Therefore, the exception is 'confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party.'") (internal citations omitted). That is not the case here. Even Plaintiff asserts that Alma allegedly used Google Analytics for "its own commercial gain". *See* Compl. ¶ 117. Even if the alleged interception produced some downstream criminal or tortious effect, that consequence is collateral—not the targeted purpose necessary to satisfy the "crime-tort exception". Alma's use of

Google Analytics was not driven by any intent to invade user privacy or to contravene CIPA or CMIA.

Additionally, Alma did not use Google Analytics to knowingly (or even unintentionally) disclose PHI in violation of HIPAA, regardless of Plaintiff's allegations of same. *See* Compl. ¶ 125. The Complaint, as pled, improperly asserts the capturing of any healthcare or medical information alone amounts to a violation of HIPAA, which is not the case. *See Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) ("the disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not *necessarily* implicate HIPAA.") (emphasis in original). Plaintiff fails to allege any personally identifiable information (*i.e.* PHI and PII) was actually disclosed to Google through Google Analytics. The transmissions allegedly captured by Google Analytics on the Website include a "Google Place ID", which allegedly identifies "a place" in the Google Places database and on Google Maps to a city, state, and zip code. Compl. ¶ 61. This is what Plaintiff claims as resulting in the deidentification of Website users when paired with Google's other tools such as identity spaces and signals. *See id.* at ¶¶ 70-83. This does not allow for a reasonable inference that this matter involves the PHI and PII of Plaintiff and class members because this vague and imprecise information does not actually result in the identification of a specific Website user.

Furthermore, Alma or Google would be incapable of identifying a user based on the information allegedly captured through Google Analytics. As such, the information is not PHI for purposes of HIPAA. *See Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) (court dismissed complaint because "[t]here [was] nothing about [plaintiff's] browsing activity that relate[d] specifically to *her* health or relationship with Upperline.") (emphasis in

original); *see also J.C. v. Cath. Health Sys. Inc.*, No. 1:23-CV-00796(JLS)(JJM), 2024 WL 5136236, at *10-14 (W.D.N.Y. Aug. 29, 2024) (court dismissed plaintiff's ECPA claim because plaintiff's allegations were not specific enough to allow an inference that defendant was transmitting individually identifiable health information to third parties). The inapplicability of the "crime-tort exception" is further supported by other matters reviewed by this District. *See Pattison*, No. 23-CV-11305 (NSR), 2025 WL 1756364.

Notably in *Gay v. Garnet Health*, this District concluded that plaintiffs sufficiently alleged an independent action secondary to the interception in satisfaction of the "crime-tort exception" whereby plaintiffs' alleged defendant's use of Pixel shared a user's Facebook User ID whenever an individual accessed their Facebook account from the same web browser as defendant's website. No. 23-CV-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024). Additionally, in *Gay*, the Conversion API used on defendant's website would send plaintiffs' activity on the Website, as tracked by the Conversion API, such as if plaintiffs scheduled appointments, communications with doctors, completed patient web forms, and reviewed medical and billing records, to Facebook. *See id.* at * 1. In comparing *Gay* to this matter, Plaintiff's allegations are deficit to assert the "crime-tort exception". Here, the alleged web transmissions captured by Google Analytics are not in plain English, arguably amount to record information describing a user's interaction with the Website, and not personally identifiable. Therefore, Plaintiff's assertions to support the applicability of the "crime-tort exception" should fail as a matter of law.

**C. Plaintiff Fails To State A Claim Under CIPA.**

CIPA should not govern Alma. According to Northern District of California, the California legislature did not intend for CIPA to apply outside of California. *See DellaSala v. Samba TV, Inc.*, No. 3:25-CV-03470-JSC, 2025 WL 3034069, at *3 (N.D. Cal. Oct. 30, 2025). Furthermore, the Northern District held that to invoke CIPA, then a plaintiff must allege conduct in California. *See*

*id.* Here, the Complaint does not sufficiently allege conduct in California, outside of Plaintiff's state of residence, to invoke an extraterritorial application of CIPA on Alma, a Delaware corporation with a principal place of business in New York. Notwithstanding same, Plaintiff's claims under § 631 and § 632 should be dismissed, as discussed in further detail below.

1. *§ 631*

Plaintiff fails to state a viable claim under Section 631 of CIPA, which is premised on an alleged violation of Cal. Penal Code § 631(a). *See* Compl. ¶ 132. Section 631 is generally treated as having four different subparts or "clauses" which are independent violations of the statute, or put differently different clauses which respectively prohibit three different "patterns of conduct". *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 975 (C.D. Cal. 2023).These patterns are summarized as (1) intentional wiretapping, (2) attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained as a result of engaging in activities prohibited under (1) or (2). *See id.* In addition, Section 631(a) also prohibits aiding or conspiring with any person in violating one of the abovementioned clauses, which is known as the fourth clause. The fourth clause applies to, "[a]ny person…who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". Cal. Penal Code § 631(a). Although Google is not included as a party to this action, Plaintiff's allegation for violation of Section 631(a) is based on Alma's alleged aiding or conspiring with Google to violate each clause of Section 631(a). *See* Complaint ¶¶ 138-143. Plaintiff, however, fails to adequately plead facts that support Google's violation of each clause or that support extending culpability under Section 631(a) onto Alma, as further elaborated below.

a. <u>The "First Clause"</u>

The first clause of Section 631(a) states "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system". Cal. Penal Code § 631(a). Based on the aforementioned language, California courts have held the first clause does not apply to internet connections. *See D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, *6 (S.D. Cal., October 24, 2023) (internal quotation marks omitted); *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 n. 3 (N.D. Cal. 2023) ("As [d]efendants correctly argue, the first prong of Section 631 does not apply to internet communications") (internal citation omitted). This is true even when a plaintiff allegedly used his smartphone to access a website because the smartphone acted as a computer to access the internet. *See D'Angelo*, 2023 WL 7006793 at *6-7. Therefore, Plaintiff cannot prevail in asserting the first clause of Section 631(a), since this matter involves internet communications.

b. <u>The "Second Clause"</u>

The second clause of Section 631(a), penalizes "[a]ny person… who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is *in transit* or passing over any wire, line, or cable, or is being sent from, or received at any place within this state". Cal. Penal Code § 631(a). This is similar to the ECPA, where a violation occurs if a party intercepts a communication while "in transit" and "without the consent of all parties to the communication." *See D'Angelo v. FCA US, LLC,* 726 F. Supp. 3d 1179, 1198 (S.D. Cal. 2024) and *Javier*, 2022 WL 1744107, at *2. Therefore, Plaintiff's failure to adequately allege the interception of contents while in transit under the ECPA claim, is similar to Plaintiff's failure

in sufficiently alleging a claim under the second clause of Section 631(a). *See D'Angelo*, 726 F. Supp. 3d at 1199 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (internal quotation marks and citation omitted); *see also Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025) ("using a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping."). In particular, the transmissions alleged by Plaintiff does not constitute "content". *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("The 'contents' of a communication under CIPA and the federal Wiretap Act are the same.") (internal citation omitted). Furthermore, Plaintiff's mere recitation of the statutory language for the second clause as support for her allegation under CIPA, is insufficient to meet the pleading standard required by Rule 8. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[but a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.") (internal citation omitted).

Notwithstanding same, Plaintiff fails to allege how Google Analytics reads or attempts to read Website users' communications, which is a necessary element of the second clause. In *Doe v. Eating Recovery Center LLC*, the Northern District of California rejected plaintiff's argument that a third party's process of filtering URLs to remove information that it did not wish to store constituted "reading the communication" while in transit. *See* 806 F. Supp. 3d at 1117. Rather, the court found the third party's automated effort to avoid storing material it should not be storing could not reasonably be considered as "reading" or "learning" the contents of the communications. *Id.*

Based on *Doe*, Plaintiff's allegations should allow for a reasonable inference that Google undertook some action outside of having access to the contents of a communication through Google Analytics, which it did not, to establish a violation of the second clause. *See id.* ("Reading

or learning the contents of a communication requires 'some effort at understanding the substantive meaning' of the communication.") (internal citation omitted). The Complaint does not allow for such an inference, where Plaintiff fails to even sufficiently allege Google's receipt of Plaintiff's and class members' communications. As such, the Court should find Plaintiff's allegations related to the second clause of Section 631(a) are not well pled enough to state a claim under §631 of CIPA.

c. <u>The "Third Clause"</u>

The third clause of Section 631(a) applies to, "[a]ny person …who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained". Cal. Penal Code § 631(a). Here, Plaintiff does not sufficiently allege facts supporting the assertion that Google "used or attempted to use the communications intercepted …for its own purposes." *See* Compl. ¶ 137. The purposes referenced by Plaintiff in the Complaint, *see id.* at ¶¶ 84-86, reflect purposes that allow Google to advance the use of Google Analytics as a tool for the benefit of a client. As such, Plaintiff fails to allege purposes that would separately benefit Google or that allow the reasonable inference that Google intercepted communications for its own independent purposes. Therefore, Plaintiff's allegations under the third clause should fail. *But see Jane Doe v. Call-On DOC, Inc.*, No. 24CV2095-GPC(KSC), 2025 WL 1677632, at *13 (S.D. Cal. June 13, 2025) (the court referenced a Ninth Circuit case that involved a Facebook plug-in on third party websites that would direct a user's browser to copy a header containing a user's personally identifiable URL information and sent a separate, simultaneous but identical request to Facebook's server; this allowed Facebook to compile users' browsing histories for its own purposes).

Additionally, if Plaintiff cannot adequately plead facts to establish a violation by Google under the second clause, then Plaintiff cannot base a claim under the third clause. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) (the court found that plaintiffs

failed to plead a violation of the third clause of § 631(a) because they did not establish that the information at issue was obtained through a violation of the first or second clauses.). As such, for the reasons outlined above, including Plaintiff's inadequate pleading regarding the second clause, Plaintiff's pleading of the third clause should be held as insufficient to state a claim under Section 631(a).

d. Fourth Clause

As stated above, Plaintiff's allegations of Google's violations of the first, second, or third clause of Section 631(a) should fail and preclude Alma's liability under the fourth clause of Section 631(a). Notwithstanding same, Plaintiffs failure to allege sufficient facts that Google is a third-party eavesdropper, as further discussed below, is why Alma cannot be held liable under the fourth clause. *See Martin v. Sephora USA, Inc.*, No. 1:22-CV-01355-JLT-SAB, 2023 WL 2717636, at *12 (E.D. Cal. Mar. 30, 2023) ("Plaintiff has not alleged facts sufficient to show Hubspot and/or Salesforce is a third-party eavesdropper; therefore, [plaintiff] has not alleged facts sufficient to establish derivative liability against [d]efendant."); see also *Graham*, 533 F. Supp. 3d at 832-33 (third-party vendor's software service allowed for the capturing of defendant's data for defendant's analysis was seen as a tool used by defendant, which made the vendor an extension of defendant and not a third-party eavesdropper).

e. The "Party Exception"

The Court should find Alma's use of Google Analytics is a tool, not a eavesdropper. Even though Plaintiff provides insufficient support for establishing a claim under Section 631(a), Alma can assert a defense as a party to the alleged communications involved in this matter. The "party exception" is the legal theory that "[a] party to a conversation cannot logically be liable for 'eavesdropping' on a conversation, so a party to a communication is not liable for learning the

contents of that communication" either. *Valenzuela v. Nationwide Mut. Ins. Co.,* 686 F. Supp. 3d 969, 975-76 (C.D. Cal. 2023) (internal citation omitted); *see also Javier*, 649 F. Supp. 3d at 898 ("[A] party to a conversation can record it without the other party's knowledge without incurring Section 631 liability") (internal citation omitted). Accordingly, as the website owner with whom Plaintiff was allegedly communicating, Alma would not be liable under Section 631 for recording it. Google, as a third-party vendor and contracted agent of Alma should also be able to rely on the party exception provided under Section 631. *See Valenzuela,* 686 F. Supp. 3d at 976 (held that a party to a conversation is not prohibited from recording a conversation and later sharing it with a third party).

Alma should also not be liable for aiding and abetting Google in violation of Section 631 when Google Analytics is a tool and is not a third-party eavesdropper, which is an important distinguishment for purposes of Section 631. *See Mike Goldstein v. Rumble Inc.*, No. CV 25-06304-MWF (SKX), 2025 WL 3691987, at *2 ("[T]he California Supreme Court held that a wife's friend who listened in on an extension line to a conversation between the wife and her husband was a third-party listener who violated section 631(a).").

Google Analytics is not a eavesdropper because Plaintiff fails to specifically allege Google's capability to use the allegedly intercepted communication for another purpose. In *Goldstein*, the Central District of California opined "when website code is used to merely store or relay information for the website itself, courts treat that code akin to a … tool used by the site and thus find no third-party interception." No. CV 25-06304-MWF (SKX), 2025 WL 3691987, at *3 (internal citation omitted). On the other hand, when "data is transmitted to an independent entity that uses or is capable of using the data for that entity's own purposes, courts treat the third-party code as an eavesdropper…" *Id.* (internal citation omitted). As such, "to survive a motion to dismiss

…, 'a plaintiff must have plausibly alleged that the third-party software provider had the capability to use the communications for another purpose' other than to record and store them for the website owner." *Id.* Here, Plaintiff alleges purposes that relay information for the Website itself. In addition to that, the content of the transmissions is not legible without additional efforts of decoding the transmissions, as discussed above. Therefore, the "party exception" precludes Plaintiff's claim under Section 631(a) and this claim should be dismissed by the Court.

2. *§ 632*

Plaintiff's claim under Section 632(a) should fail because Google Analytics is not an electronic amplifying or recording device and Plaintiff fails to allege sufficient facts to support the assertion that the allegedly intercepted communications amount to "confidential communication", as defined under Section 632. *See* Cal. Penal Code § 632 (c). Plaintiff alleges a violation of Section 632(a) under CIPA, which imposes liability on "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication of another." *Griffith v. TikTok, Inc.,* 697 F. Supp. 3d 963, 972 (C.D. Cal. 2023) (internal quotation omitted).

Firstly, the facts of this matter contravene the purpose of California legislature's enactment of CIPA. *See Moss v. ResortPass Inc*, No. 24CU023415C, 2025 WL 3452360, at *2 (Cal.Super. Oct. 30, 2025) ( a trial order where the Superior Court of California opined that "[t]rying to apply these criminal statutes, originally enacted long before the internet activities described in the [the complaint] were invented, is nothing more than attempting to force a square peg into a round hole…".). Notwithstanding same, Google Analytics is not an electronic amplifying or recording device, as alleged by Plaintiff, *see* Compl. ¶ 150, because a software should not constitute a device

under CIPA. *See Moss*, No. 24CU023415C, 2025 WL 3452360, at *2 (references different cases that establish a software cannot be a device for purposes of CIPA); *see also Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*, No. 22-CV-5612 (JGK), 2025 WL 2346377, at *1 (S.D.N.Y. July 3, 2025) (refers to Google Analytics as a software). Since Plaintiff cannot "obliterate the distinction between a software code and a device by simply mischaracterizing, calling a software code a device", *Moss*, No. 24CU023415C, 2025 WL 3452360, at *2, the Court should dismiss Plaintiff's Section 632(a) claim accordingly.

Along the same line, the Court should dismiss Plaintiff's Section 632(a) claim because Plaintiff fails to allege facts that support the alleged recording of "confidential communications", as defined under CIPA. According to Cal. Penal Code § 632 (c):

> 'confidential communication' means any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

As such, Plaintiff asserts the communications on Alma's Website were confidential communications because she and class members had an expectation of privacy given the sensitive information involved in the communications, including "individually identifiable information", as defined under California law. *See* Compl. ¶¶ 154-58.

The Complaint does not support a logical inference that the communications involved should amount to "confidential communications", as defined by law, when the communications did not include information that allowed for the specific identification of the Website user. Therefore, the Complaint fails to allege sufficient facts that show the involvement of any personally identifiable information. Also, as discussed above, the contents of the information allegedly captured by Google did not contain the true value of the information, unless additional

steps were taken to decode the information. For the aforementioned reasons, the Court should dismiss Plaintiff's claim under Section 632.

3. *Statute of Limitations*

The Court should dismiss Plaintiff's CIPA claims with prejudice due to CIPA's one-year statute of limitations. *See Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1082 (S.D. Cal. 2023). Plaintiff allegedly visited Alma's website in April 2024 and Plaintiff filed her Complaint in September 30, 2025; over a year later. Although Plaintiff alleges the tolling of any applicable statutes under the theory of the delayed discovery rule, *see* Compl. ¶ 96, it is not applicable here. According to California law, "[a] plaintiff may allege application of the delayed discovery rule to toll the statute of limitations, which requires plaintiffs to plead facts which show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Doe,* 789 F. Supp. 3d at 852 (internal citation omitted).

Plaintiff's reliance on this rule should be rejected as she could have discovered the facts underlying her CIPA claim in 2024 by reviewing Alma's publicly available privacy policies. Alma's Privacy Policy in 2024 disclosed its use of Google Analytics for "web analytics service". *Personal Information,* https://helloalma.com/pp/. The accessibility of Alma's Privacy Policy negates Plaintiff's argument that Alma had exclusive knowledge of the Website's incorporation of Google Analytics. *See* Compl. ¶ 93; *see also Javier,* 649 F. Supp. 3d at 901-04 (court found that website's privacy policy, which plaintiff accepted during his visit to the website, put him on inquiry notice for statute-of-limitations purposes that his information had been collected, even if he did not know the details of the collection at that time.). Therefore, the Court should dismiss Plaintiff's CIPA claims with prejudice.

**D. Plaintiff Fails To State A Claim Under CMIA.**

Plaintiff also fails to allege facts that support the extraterritorial application of CMIA. In California, courts have determined that the absolute minimum needed for the extraterritorial application of CMIA is the existence of a "recognizable nexus between the alleged harm and the State of California." *Hill v. Workday, Inc.*, No. 23-CV-06558-PHK, 2024 WL 3012802, at *14 (N.D. Cal. June 14, 2024) (internal citation omitted). The Complaint fails to meet that standard by failing to allege where the alleged violations of the CMIA took place. As such, without this "nexus", this claim should be dismissed. Notwithstanding same, Plaintiff's pleadings require a dismissal of the CMIA claim.

Plaintiff bases her claim on the violation of § 56.10(a) and (d) under the CMIA. Under Section 56.10(a), "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization, *except as provided in subdivision (b) or (c).* (emphasis added). While Section 56.10(d) states, "[e]xcept to the extent expressly authorized by a patient, enrollee, or subscriber, *or as provided by subdivisions (b) and (c),* a provider of health care, health care service plan, contractor, or corporation and its subsidiaries and affiliates shall not intentionally share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide health care services to the patient. (emphasis added). Plaintiff fails to state a claim under both of these alleged violations since Plaintiff fails to adequately plead the involvement of "medication information", as defined by CMIA.

CMIA defines "medical information" as "individually identifiable information … regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment" Cal. Civ. Code § 56.05 (j). "Individually identifiable" means " personal identifying information sufficient to allow

identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." *Id.* The meaning of medical information for purposes of CMIA has been narrowly interpreted as something more than "any patient-related information held by a health care provider, but must be individually identifiable information ... include 'a patient's medical history, mental or physical condition, or treatment.'" *Eisenhower Med. Ctr. v. Superior Court,* 226 Cal. App. 4th 430, 435 (2014). This information must be "substantive" *See id.* at 434.

As alleged, Plaintiff's definition of medical information includes any information allegedly captured by Google Analytics, regardless of substance and could be information that may not equate to a user's actual medical history, mental or physical condition, or treatment, as confirmed by a medical professional. *See* Compl. ¶ 171; *Harrill v. Emanuel Med. Ctr.*, No. 2:23-CV-01672-DC-CKD, 2025 WL 1635428, at *4 (E.D. Cal. June 9, 2025) ("Indeed, '[a]n internet user might research medical information for reasons unrelated to the user's own health conditions.'") (internal citation omitted). As such, Plaintiff's allegations are conclusory and to overcome a motion to dismiss, more information is needed to support a reasonable inference that medical information was disclosed, intentionally shared, sold, used for marketing, or any other purpose, in violation of CMIA. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (Although the plaintiffs alleged that the defendant "disclosed to Meta their personal, confidential, and sensitive medical information; communications and messages with doctors; medical test results; payment information; and, password reset information," the district court found that "these allegations [were] conclusory and devoid of any factual support.").

As pled, Plaintiff's allegations fail to adequately establish that the involved information is individually identifiable, which is a necessary element of CMIA's definition of medical information. Although Plaintiff alleges Google's capabilities of identifying individual Website user, *see* Compl. ¶ 171, Plaintiff fails to allege whether Google actually did so or provide adequate information that supports such an inference.

CMIA also requires a plaintiff to plead that their purported medical information was "[improperly] viewed or otherwise accessed." *See Cousin,* 681 F. Supp. 3d at 1128; *see also Barbour v. John Muir Health,* No. C22-01693, 2023 WL 2618967, at *8 (Cal. Super. Jan. 5, 2023) (trial court order dismissing CMIA claim in Pixel healthcare case, stating, "in the absence of allegations that the information was 'actually read,' [p]laintiffs have failed to allege facts sufficient to state a violation of the CMIA"); and *Vigil v. Muir Medical Group IPA, Inc.,* 84 Cal.App.5th 197, 218-219 (2022) (the mere ability of an unauthorized party to access information cannot support a CMIA claim). The Complaint does not allege facts to allow for an inference that Google actually viewed or accessed Plaintiff's PII or PHI.

Lastly, Plaintiff's claim for damages is improper. In the Complaint, the Plaintiff alleges damages pursuant to Section 56.36 of CMIA. *See* Compl. ¶ 176. Section 56.36 states, "[i]n addition to any other remedies available at law, an individual may bring an action against a person or entity who has *negligently released* confidential information or records concerning him or her in violation of this part…". Cal. Civil Code § 56.36(b) (emphasis added). "[I]t is not [] necessary that the plaintiff suffered or was threatened with actual damages." *Id.* This claim should fail because Plaintiff's CMIA claim is premised on Section 56.10, which deals with unauthorized disclosure rather than negligent release. As such, Plaintiff's claim under Section 56.36 is inappropriate. In *Regents of Univ. of California v. Superior Ct,* the Second District of California, opined the term

"negligent release" as used in Section 56.36(b) is not synonymous with the term "disclose" as used in sections 56.10 and 56.35 of the CMIA. 220 Cal. App. 4th 549, 566, 163 Cal. Rptr. 3d 205, 218 (2013). Therefore, the lack of allegations relating to Alma's negligence bars Plaintiff's damages under Section 56.36.

Based on the reasoning above, the Court should dismiss Plaintiff's claim under the CMIA or at least curtail the damages available.

**E. Plaintiff Fails To State A Claim For Invasion of Privacy.**

To state a claim for invasion of privacy under California's Constitution, a plaintiff must allege (1) a reasonable expectation of privacy, and (2) that the intrusion was highly offensive. *D'Angelo*, 726 F. Supp. 3d at 1204. In relation to the first element, "courts consider whether a defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Id.* (internal quotation marks and citations omitted). "This assessment requires courts to consider the 'customs, practices, and circumstances surrounding a defendant's particular activities,' including the manner in which data is collected, the amount and sensitivity of the data, and the defendant's representations to users." *Id.* Here, the Complaint fails to allege why the presence of Google Analytics was highly offensive as required for a claim invasion of privacy.

Furthermore, California courts are reluctant to find a reasonable expectation of privacy when the data collected is not sensitive, *see D'Angelo*, 726 F. Supp. 3d at 1206, which is the case here, as discussed above. Since the Complaint fails to adequately support an inference that the information allegedly captured by Google Analytics contained PII/PHI, could truly identify Website users, or that Alma's access to this data was unwanted or covert, Plaintiffs claim for an invasion of privacy should be dismissed.

If the Court agrees there was no wiretap, then Plaintiff will have failed to plausibly plead a legally protected privacy interest. *See Graham*, 533 F. Supp. 3d at 836 (the court dismissed a claim for invasion of privacy because the court found there was no plausible wiretapping). This would also give cause for dismissing this claim. Nonetheless, this Court should find Plaintiff's allegations related to invasion of privacy are insufficiently pled and dismiss the claim accordingly.

**F. Plaintiff Fails To State A Claim For Intrusion Upon Seclusion.**

Since Plaintiff's claim for intrusion upon seclusion is a common law tort claim, there is a conflict between the application of New York law or California law. "For tort claims, New York courts adopt an 'interest analysis' test, requiring application of the law of the state with the greatest interest in the outcome of the litigation. The significant factors to be considered in tort actions are 'almost exclusively, the parties' domiciles and the locus of the tort.'" *Wang v. Marziani*, 885 F. Supp. 74, 77 (S.D.N.Y. 1995). Alma has a principle place of business in New York and any actions or inactions by Alma that caused Plaintiff and class members harm would have occurred in New York. Therefore, this Court should resolve the "interest analysis" test as New York having the greatest interest in the outcome of the litigation. Therefore, to succeed in a claim for intrusion upon seclusion, Plaintiff must establish Alma "'intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, [and] is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Gabrielli*, No. 24-CV-01566 (ER), 2025 WL 522515, at *6 (internal citations omitted).

Here, the foundation of Plaintiff's claim for intrusion upon seclusion is the alleged lack of consent given by Plaintiff and class members in relation to the installation and embedding of Google's tools on the Website; the alleged reasonable expectation of confidentiality entitled to

Plaintiff and class members; and the highly offensive nature associated with Plaintiff's and class members' invasion of privacy. *See* Compl. ¶ ¶ 187-88, and 190. These allegations are insufficient to establish a claim for intrusion upon seclusion under New York law because they fail to address the intentionality needed under New York's law. The reasonable inference of same based on the pleadings is unlikely because Alma did not force Plaintiff and class members to interact with its Website. As such, the voluntary decision of Plaintiff and class members to access Alma's Website, should rebut any claim that Alma intentionally intruded upon Plaintiff's and class members' affairs. *See Gabrielli*, No. 24-CV-01566 (ER), 2025 WL 522515, at *6 (this District dismissed a claim for intrusion upon seclusion because the plaintiff had sought defendant's website and provided the information that was the basis for his claim; so plaintiff could not argue that defendant intruded). Therefore, this claim should be dismissed as well.

## V. CONCLUSION

For the foregoing reasons, Alma respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

## CERTIFICATION

I, Jacob Lisogorsky, hereby certify that the foregoing Memorandum of Law complies with Local Civil Rule 7.1 in that the total number of words in this Memorandum of Law, exclusive of the caption, table of contents, table of authorities, and the signature block, amounts to 8,732 words and therefore does not exceed the 8,750 word count limit.

*s/*__________________________