**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

SHARIKA SAWER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ARLOZOROV9, INC., d/b/a ALMA,

Defendant.

Case No. 1:26-cv-00732-JMF

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ....... 1

ARGUMENT ....... 1

I. PLAINTIFF HAS ARTICLE III STANDING ....... 1

A. Plaintiff Was Injured Because Defendant's Conduct Deprived Her Of The Right To Control The Dissemination Of Her Personal Medical Information ....... 3

B. Plaintiff's Non-Anonymized, Private Medical Information Is Personal Information Protected By The Right To Privacy ....... 5

II. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER FEDERAL WIRETAP CLAIM ....... 7

B. Defendant Is Liable Under The ECPA's Crime-Tort Exception ....... 10

III. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER CIPA CLAIM ....... 14

II. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER CMIA CLAIM ....... 22

A. The Complaint Alleges the Conduct Occurred In California ....... 22

B. Plaintiff Alleges The Disclosure Of Her Medical Information ....... 22

III. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER INVASION OF PRIVACY CLAIM ....... 25

IV. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER INTRUSION UPON SECLUSION CLAIM ....... 27

CONCLUSION ....... 27

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ... 19

*Augustine v. Lenovo (United States), Inc.*,
2023 WL 4938050 (S.D. Cal. 2023) ... 18

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal,. 2024) ... 24

*Bernstein v. United Collection Bureau, Inc.*,
2013 WL 5945056 (S.D. Cal. Nov. 5, 2013) ... 21

*Boelter v. Advance Mag. Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) ... 6

*Brodsky v. Apple Inc.*,
445 F. Supp. 110 (N.D. Cal. 2020) ... 8

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 11, 26

*Brown v. Google LLC,*
685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ... 5, 20

*Calhoun v. Google LLC*,
526 F. Supp. 3d (N.D. Cal. 2021) ... 26

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ... 22

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ... 2, 7

*Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*,
132 Cal. App. 4th 1466 (Cal. Ct. App. 2005) ... 23

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ... 24

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ... 17

*Doe v. Baystate Health System, Inc.*,
2026 WL 776861 (D. Mass. Mar. 19, 2026) ... 11

*Doe v. Eating Recovery Center, LLC*
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ... 17

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ... 22

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 n.5 (N.D. Cal. Apr. 11, 2024) ... 15

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. 2023) ... 11, 20

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ... 9, 12, 16, 17

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ... 4

*Eisenhower Med. Ctr. v. Superior Ct.*,
226 Cal. App. 4th 430 (Cal. Ct. App. 2014) ... 23

*Eletson Holdings, Inc. v. Levona Holdings Ltd.*,
731 F. Supp. 3d 531 (S.D.N.Y. 2024) ... 4

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ... 17

*Ewing v. Flora*,
2015 WL 12564225 (S.D. Cal. Mar. 25, 2015) ... 21

*Franklin v. Ocwen Loan Servicing, LLC*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) ... 21

*Frasco v. Flo Health, Inc.*,
--- F.R.D. ---, 2025 WL 1433825 (N.D. Cal. May 19, 2025) ... 3, 4, 6, 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*,
528 U.S. 167 (2000) ... 1

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ... 5

*Gay v. Garnet Health*
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ... 14

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .............................................................. 11, 13

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024)..................................................................... 19

*Greenley v. Kochava*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................................................................... 20

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) ....................................................................................... 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...................................................................... 15

*Heiting v. FKA Distributing Co.*,
2025 WL 1430663 (C.D. Cal. May 15, 2025) ............................................................... 5

*In re Ambry Genetics Data Breach Litigation*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ...................................................................... 26

*In re Christie's Data Breach Litigation*,
767 F. Supp. 3d 12 (S.D.N.Y. 2025)............................................................................. 4

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 596 (9th Cir. 2020) ........................................................................... 2, 4, 5, 25

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)........................................................................................... 8

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019)........................................................................................... 3

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................. 8, 9, 11, 15, 21

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)........................................................................................... 9

*In re Zynga Privacy Litig.*
750 F.3d 1098 (9th Cir. 2014) ........................................................................................ 8
*James v. Walt Disney Co.*,

701 F. Supp. 3d 942, 961-62 (N.D. Cal. 2023)........................................................ 4, 5, 17

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ................................................................ 18, 19, 21

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......................................................................................... 2

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ..................................................................................................... 16

*Krzyzek v. OpenX Techs., Inc*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ....................................................... 11, 13

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025)............................................................................. 20

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024)........................................................ 11, 24

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)........................................................................... 3

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)................................................................ 17

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)............................................................................ 12

*Mike Goldstein v. Rumble Inc.*,
2025 WL 3691987 (C.D. Cal. Nov. 6, 2025)................................................................. 19

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)............................................................................... 7

*Moss v. ResortPass Inc.*
2025 WL 3452360 (Cal.Super. Oct. 30, 2025) .............................................................. 20

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) .......................................................................................... 15

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022).............................................................. 25

*Pattison v. Teladoc Health, Inc.*,
2025 WL 1756364 (S.D.N.Y. June 25, 2025) ................................................................... 9

*Petris v. Sportsman's Warehouse, Inc.*,
736 F.Supp.3d 260 (W.D. Pa. June 3, 2024) .................................................................... 1

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ............................................................................................ 15

*Popa v. Microsoft Corp.*,
2025 WL 2448824 (9th Cir. Aug. 26, 2025) .......... 6

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 12

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 12

*Regents of the University of California v. United States District Court*
672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) .......... 26

*Ribas v. Clark,*
38 Cal. 3d 355 (1985) .......... 1, 4, 19

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 11, 12

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 26

*Salazar v. National Baksetball Ass'n*,
118 F.4th 533 (2d Cir. 2024) .......... 1, 2

*Salazar v. Paramount Global*,
133 F.4th 642 (6th Cir. 2025) .......... 2

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 7

*Semien v. PubMatic Inc.,*
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......... 11, 13

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 11

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 20, 21

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 13

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 2, 3

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675, (N.D. Cal. Oct. 1, 2024),.......... 17, 23, 24

*Stanley v. Georgia,*
394 U.S. 557 (1969).......... 5

*Stasi v. Inmediata Health Group Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020).......... 26

*Stehl v. Cretella*,
2026 WL 555085 (D. Conn. Feb. 27, 2026).......... 27

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025).......... 13

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023).......... 15

*Tate v. Vitas Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025).......... 19

*Tattered Cover, Inc. v. City of Thornton*,
44 P.3d 1044 (Colo. 2002).......... 6

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978).......... 14

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025).......... 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......... 2, 3

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989).......... 1, 3

*United States v. Luong*,
471 F.3d 1107 (9th Cir. 2006).......... 15

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. 2023).......... 18

*Vigil v. Muir Med. Grp. IPA, Inc.*,
84 Cal. App. 5th 197 (2022).......... 24

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024).......... 19

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................................................................. 18, 19

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .................................................................. 8

**STATUTES**

18 U.S.C. § 2510 .................................................................................................. 8, 15

18 U.S.C. § 2511 .................................................................................................. 10

42 U.S.C. § 1320d-6 .................................................................................................. 12

Cal. Civ. Code § 56.05 .................................................................................................. 23

Cal. Civ. Code § 56.10 .................................................................................................. 23, 25

Cal. Pen. Code § 630 .................................................................................................. 19

Cal. Pen. Code § 632 .................................................................................................. 20, 21

# INTRODUCTION

When Plaintiff sought therapy for her mental health condition on Defendant's Website, helloalma.com, her communications were read, learned, recorded, and analyzed by a completely separate company: Google. *See, e.g.*, FAC ¶ 136. Google had no business learning the contents of Plaintiff's conversations. *See id.* ¶ 10. Yet, this is the exact result intended by Defendant. *Id.* ¶¶ 87-90. Defendant made Google an "unseen auditor" to Plaintiff's private communications, thereby depriving Plaintiff of her "right to control the nature and extent of the firsthand dissemination of [her] statements." *Ribas*, 38 Cal. 3d at 361. This is an injury long recognized at "both the common law and the literal understandings of privacy." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).

Faced with these allegations, Defendant resorts to legal and factual arguments that have been rejected by state and federal courts alike. This Court should conclude no differently and deny Defendant's motion to dismiss ("MTD") in full.

# ARGUMENT

## I. PLAINTIFF HAS ARTICLE III STANDING

In order to establish Article III standing, a plaintiff must plead facts that plausibly demonstrate three things: (1) he has suffered a concrete, particularized, and actual (*i.e.*, not conjectural or hypothetical) injury; (2) the injury is traceable to the challenged action of the defendant; and (3) it is likely (*i.e.*, not merely speculative), that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000). The harm suffered by the plaintiff must have a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Salazar v. National Baksetball Ass'n*, 118 F.4th 533, 541 (2d Cir. 2024); *Petris v. Sportsman's*

*Warehouse, Inc.*, 736 F.Supp.3d 260, 270-71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words…[i]t is not necessary…for a plaintiff asserting such a claim to plead or establish *the elements* of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Second Circuit is in accord, acknowledging that "[o]ne intangible harm that readily qualifies as concrete is the public disclosure of private facts." *Salazar*, 118 F.4th at 541; *see also Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1117-19 (9th Cir. 2020) ("[The harms protected by the ECPA and CIPA] bear a close relationship to ones that have traditionally been regarded as providing a basis for a lawsuit. . . and one of the several privacy torts historically recognized was unreasonable intrusion upon the seclusion of another.") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)) (internal citations omitted)).

Unsurprisingly, Circuit courts regularly find that the disclosure of browsing information in violation of a privacy statute (including CIPA) is sufficient for Article III standing. *See, e.g.*, *Salazar*, 118 F.4th at 542 (finding standing where plaintiff alleged his data "was disclosed as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel") (cleaned up); *In re Facebook*, 956 F.3d 596, 599 (9th Cir. 2020) (finding Article III standing where "Facebook uses plug-ins to track users' browsing histories when they visit third-party websites, and then compiles these browsing histories into personal profiles which are sold to advertisers to generate revenue"); *Jones v. Ford Motor Co.*, 85 F4th 570, 574 (9th Cir. 2023) ("A statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing.") (cleaned up); *Salazar v. Paramount Global*, 133

F.4th 642, 648 (6th Cir. 2025) (finding "Salazar's alleged injury—the disclosure of his 247Sports.com private video-viewing history to Facebook," sufficient to confer Article III standing). The case at hand involves an even more severe privacy violation because it concerns not only web browsing activity but actual therapy consultations scheduled by Plaintiff and class members.

Against this spate of authority, Defendant contends that Plaintiff lacks Article III Standing because she does not allege that allowing Google to intercept information about her use of the Website concretely injured her. *See* MTD at 6. As the Third Circuit aptly put it, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion … that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data [] is untenable." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019).[1]

### A. Plaintiff Was Injured Because Defendant's Conduct Deprived Her Of The Right To Control The Dissemination Of Her Personal Medical Information

Defendant contends Plaintiff cannot allege an injury in fact because "Plaintiff has failed to plead any cognizable privacy or concrete injury sufficient to establish Article III standing." MTD at 6. Defendant misunderstands the harm that laws like CIPA protects against.

"The common law secures to each individual the right of determining ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." *Dep't of Just. v.*

[1] Most of these decisions post-date *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) (and all post-date *Spokeo v. Robins*, 578 U.S. 330 (2016)), but even those that pre-date it remain good law. "*TransUnion* had nothing to say about the surreptitious appropriation of private ... data," and "TransUnion did not affect a sea change in the law of standing." *Frasco v. Flo Health, Inc.*, --- F.R.D. ---, 2025 WL 1433825, at *12 (N.D. Cal. May 19, 2025); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1138 (E.D. Cal. 2021) ("*TransUnion* involved a fundamentally different type of alleged injury than the one here ... which the Supreme Court analogized to the common law tort of defamation.").

*Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 n.15 (1989). To that end, the "right to privacy encompasses the individual's control of information concerning his or her person." *In re Facebook*, 956 F.3d at 598 (cleaned up). It is this historical privacy right that CIPA was codified to protect. *See id.*; *see also Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (in describing purpose of CIPA § 631, noting the "simultaneous dissemination" of a conversation "to an unannounced second auditor ... denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements"). And it is this privacy right that Defendant deprived Plaintiff of by causing her private medical information to be intercepted by Google without consent. *Frasco*, 2025 WL 1433825, at *12 ("[T]he loss of control over one's personal information is the 'concrete' harm, whether from stealing access to a personal diary in 1916 or obtaining user information in a healthcare app in 2016."); *James*, 701 F. Supp. 3d at 949. Indeed, "privacy torts do not always require additional consequences to be actionable ... [in] the tort of intrusion upon seclusion ... the intrusion itself makes the defendant liable." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (cleaned up).

This Court's decision in *In re Christie's Data Breach Litigation*, 767 F. Supp. 3d 12, 15-16 (S.D.N.Y. 2025) is instructive. There, this Court found that the plaintiffs' allegation "that they have already been harmed by the disclosure of their private information to an unauthorized malevolent actor" was "plainly concrete." *Id.* at 15. And this Court clarified that "public disclosure is itself a cognizable injury." *Id.* at 16 (citing *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 573 (S.D.N.Y. 2024) ("The Second Circuit has held, post-*TransUnion*, that a plaintiff whose private information has been disclosed to third parties has standing to sue regardless of whether the third parties used that information to cause additional

harm.”)).

Thus, Plaintiff’s injury here is no mere technical violation. Instead, CIPA “codif[ies] a substantive right to privacy [the right to control the dissemination of personal information], the violation of which gives rise to a concrete injury sufficient to confer standing.” *In re Facebook*, 956 F.3d at 598 (cleaned up); *see also Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *5 (N.D. Cal. Aug. 29, 2025) (where only IP addresses were allegedly collected); *Brown*, 685 F. Supp. 3d at 925.

### B. Plaintiff’s Non-Anonymized, Private Medical Information Is Personal Information Protected By The Right To Privacy

Defendant argues that Plaintiff lacks standing because she “fails to adequately allege an impact to a legally protected privacy interest.” MTD at 6. That is wrong.

Courts have routinely held that even Internet browsing information such as “specific web pages viewed, search terms entered, and purchase behavior” constitutes “personal information.” *Walt Disney Co.*, 701 F. Supp. 3d at 949; *Heiting v. FKA Distributing Co.*, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025) (finding interception of “device and browser information, geographic information, referral tracking, and URL tracking” sufficed for Article III standing) (cleaned up); *Brown v. Google LLC,* 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (“Ninth Circuit law indicates [] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views.”).

The information here is even more private than ordinary browsing information as it divulges the type of therapy that individuals are looking for, areas they want to focus on (e.g., depression), the approach they want their provider to take in therapy (e.g., confronting trauma), preferences as to their provider’s identity (i.e., their provider’s faith, gender, race, and/or sexuality), where they are seeking therapy, whether they are seeking virtual or in-person care,

how they plan to pay, the name of the provider with whom they select to book a consultation, and the fact that patients actually booked a consultation. FAC ¶ 9. As far as mere browsing is concerned, the Central District of California and others have found similar information to be "sensitive and confidential" because it "reveal[s] the specific content Plaintiffs consumed." *Heerde*, 741 F. Supp. 3d at 864 (discussing video-viewing information); *see also, e.g.*, *Stanley v. Georgia*, 394 U.S. 557, 565 (1969) (recognizing the right of the individual "to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home"); *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1053 (Colo. 2002) ("Search warrants ... demanding information about the reading history of customers, intrude upon the First Amendment rights of customers and bookstores because compelled disclosure of book-buying records threatens to destroy the anonymity upon which many customers depend."); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 599 (S.D.N.Y. 2016) ("Michigan is not alone in concluding that disclosure to third parties of content that individuals choose to consume raises privacy concerns...").

*Popa v. Microsoft Corp.*, 2025 WL 2448824 (9th Cir. Aug. 26, 2025), does not change this analysis. *Popa* involved anonymous information that was used for technical troubleshooting being disclosed without consent. *Id.* Thus, while the plaintiff in *Popa* claimed her privacy was invaded, she could not tie that invasion to any specific privacy harm because the information was anonymous. *Id.* This is not analogous to the present facts. Plaintiff has specifically alleged that her personal information was disclosed to Google via surreptitiously intercepted communications with Defendant. *See* FAC ¶ 9. Crucially here, Plaintiff alleges that this information was tied directly to her in that she was able to be identified. *See id.* ¶¶ 70-83. Such eavesdropping and wiretapping have consistently been found to be a privacy harm by federal courts. *See Frasco v.*

*Flo Health, Inc.*, 2025 WL 1433825, at *12 (N.D. Cal. May 19, 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference.") (cleaned up). Consequently, "obtaining user information … is the 'concrete harm,'" as the user "has lost control over her private information because of another's intentional actions." *Frasco*, *supra*, 2025 WL 1433825, at *12.

Such information goes beyond "basic contact information" under *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023). Here, Defendant aided and employed Google in intercepting the contents of Plaintiff's communication, the intended message conveyed by her communication, not simply record information. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517-18 (C.D. Cal. 2021). Plaintiff also alleges that Google analyzed this information to deliver its services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads users see on Google and on partner sites and apps. FAC ¶ 86. Furthermore, Defendant aided and employed Google to eavesdrop and wiretap Plaintiff's interactions with the website without Plaintiff's knowledge or consent. *Id.* ¶ 138. Defendant's aiding and employing Google to wiretap and eavesdrop on Plaintiff therefore caused Plaintiff an injury sufficient to meet the standing threshold.

This is on top of the California Legislature recognizing and codifying the privacy of this information. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) ("[L]egislatures may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.") (cleaned up).

## II. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER FEDERAL WIRETAP CLAIM

### A. Defendant Intercepted The Contents Of Plaintiff's Communications

Defendant posits that the transmissions at issue "do[] not convey the substance or

meaning of any communication." MTD at 10 (internal quotations omitted). That is wrong because Defendant mischaracterizes the information being intercepted.

Courts interpret "content" under the CIPA and ECPA as "the intended message conveyed by the communication . . . not includ[ing] record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (internal citations omitted); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts conduct a "case-specific" analysis to distinguish "content" from record information; this analysis focuses on "how much information would be revealed by the information's tracking and disclosure." *Yoon*, 2024 WL 5264041, at *5.

Under the ECPA, "content" includes "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "For instance, contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). The "post-domain name portions" of website URLs—everything after ".com"—also disclose details about the webpages requested and constitute "content" under the ECPA. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user"). Under *In re Zynga Privacy Litig.*, "a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to a disclosure of the contents of a communication." 750 F.3d 1098, 1108 (9th Cir. 2014).

That is precisely what Plaintiff has alleged here. As detailed in the FAC, and as seen from the network traffic observed on the Website, Defendant intercepts Plaintiff's and Class Members' identities through Google Analytics, which it links to their interactions on the Website. FAC ¶ 62. Ninth Circuit precedent is clear, communications intercepted by the tracking technologies, like Google Analytics, constitute "contents" if they reveal the substance of protected queries, as is the case here. *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 795–96 (observing that "log-in buttons and…descriptive URLs…are 'contents' within the meaning of the statute . . . because they concern the substance of the communication.").

While this District has not yet decided whether browsing information is content under the ECPA, this issue is beside the point. The information here goes well beyond mere browsing. As this District has recognized, courts have held that "some queried URLs qualify as content, reasoning that a URL may convey substantive information about web browsing activity, instead of mere 'dialing, routing, addressing, or signaling information." *Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364, at *6 (S.D.N.Y. June 25, 2025) (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016)) (internal quotation marks omitted). Here, Defendant obtained information about Plaintiff's and class members' actual therapy appointments including the type of therapy Website users were looking for, areas they wanted to focus on (e.g., depression), the approach they want their provider to take in therapy (e.g., confronting trauma), preferences as to their provider's identity (i.e., their provider's faith, gender, race, and/or sexuality), where they are seeking therapy, whether they are seeking virtual or in-person care, how they plan to pay, the name of the provider with whom they select to book a consultation, and the fact that patients actually booked a consultation. FAC ¶ 9. Such information is analogous to the "information relating to [plaintiff's] pregnancy, childbirth, and her specific

treating physician" found to be content in *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025).

Defendant also asserts that the "allegedly intercepted information is not comprehensible" because it is transmitted in Base64. MTD at 9. This argument fails out of the gate because sensitive information is transmitted in plain English. As detailed in the FAC, this includes: the name of the clinician selected by a Website user (*e.g.*, "'[L]uis…[E]fren…[A]guilar'") (FAC ¶ 64); the fact that a user chose a specific clinician from the "'recommended'" list of providers (*e.g.*, "from_recommended") (*id.*); where the user is seeking therapy (*e.g.*, "providers-results/ca" as in California) (*id.* ¶ 62); and how the user plans to pay (*e.g.*, "out-of-pocket") (*id.*).

In any event, Defendant's argument is akin to arguing that any message sent over a computer is unintelligible because the communication is conveyed in binary code or that a message in English is not "content" if it is sent to a Spanish-speaker. Moreover, Base64 is not a form of encryption; it is easily put into plain English using a number of publicly available tools. *See* FAC ¶ 63. When translated, messages such as "payment_out_of_pocket," "identity_gender_non_binary," and "identity_faith_christian," among others, are hardly "obscur[e]." MTD at 9.

**B. Defendant Is Liable Under The ECPA's Crime-Tort Exception**

Defendant argues that Plaintiff cannot state an ECPA claim because the crime-tort exception does not apply. MTD at 10-13. This is wrong.

There can be no violation of ECPA if "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(d). An exception to this exception exists, however, where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

Courts have routinely found this "crime-tort" exception applies where plaintiffs: (1) "alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles"; (2) that this "association of their data with preexisting user profiles violated state law" (*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)); and (3) that the technology companies "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exemption does not apply."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)*; Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023) ("What [defendant's] true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record."); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) ("[T]he disclosure and use of Plaintiffs' information for advertising can plausibly constitute an independent invasion of privacy beyond the act of intercepting the information alone, satisfying the crime-tort exception."); *Semien*, 2026 WL 216333, at *9-10; *Krzyzek*, 2026 WL 206855 at *8; *Doe v. Baystate Health System, Inc.*, 2026 WL 776861, at *3-5 (D. Mass. Mar. 19, 2026).

Plaintiff has sufficiently alleged the crime-tort exception to the one-party consent exemption to liability under the ECPA. *See* FAC ¶¶ 124-126 ("Defendant intentionally

intercepted and endeavored to intercept Plaintiff's and Class Members' communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, violation of the CIPA, the CMIA, and the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-6(a)(3), among others."), *id.* ¶¶ 84-86 ("Google Uses Californians' Data for its Own Purposes"). That Defendant's conduct was related to commercial activity does not excuse its liability. As Judge Tigar recently held in a similar case:

> [T]his Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable.
>
> …
>
> The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money.

*Riganian*, 791 F. Supp. 3d at 1090-91 (declining to "adopt any bright-line rule insulating financial motives from the crime-tort exception") (cleaned up).

Judge Tigar is not alone in his reasoning. *See, e.g.*, *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) (finding under the alternate reading, "the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 850 (E.D. Cal. 2025) ("financial[] motivate[ions] … do not immunize Defendants from liability under the ECPA"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (rejecting Defendant's reasoning); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024) ("the Court has serious doubts that a pecuniary purpose and an injurious purpose can always be so clearly

distinguished. And it defies common sense that a clearly harmful act could escape liability as long as it was done for profit."); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("the existence of a financial motivation is not a get-out-of-liability-free card"); *R.C.*, 733 F. Supp. 3d at 901-02 (collecting cases); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (explaining that "the crime-tort exception applies when a party uses intercepted communications to blackmail someone, even if the primary motivation for engaging in blackmail is to make money"); *Gilligan*, 2026 WL 32259, at *3 ("[B]eing primarily motivated to make money does not preclude application of the crime-tort exception, which is adequately alleged to apply here."); *Krzyzek*, 2026 WL 206855 at *8 ("The Court is not persuaded by the authorities OpenX cites to argue financial motives cannot constitute tortious motive. As numerous lower courts have found, being primarily motivated by profit does not render the crime-tort exception inapplicable. Where, as here, plaintiffs adequately alleged invasion of privacy, the Court is not convinced that ECPA's crime-tort exception does not apply.") (internal citations omitted); *Semien*, 2026 WL 216333, at *10 (same).

Defendant argues that the intercepted data was not individually identifiable. MTD at 12. But this ignores the FAC's detailed allegations about how Defendant enables Google to link the intercepted health data to specific, identified individuals. *See* FAC ¶¶ 70-83. *First*, Defendant enables Google to identify individual Website users with "'Google signals,'" which "'associates [data] with user[s'] … Google accounts[.]'" FAC ¶¶ 57, 83 (quoting Google); *see also id.* ¶¶ 155, 171, 175. Indeed, Google itself explains that "'[w]hen Google signals data is available, Analytics associates event data it collects from users with the Google accounts of users who are signed in[.]'" *Id.* n.51 (quoting Google). Thus, "with Google Signals, 'Google is able to develop a holistic view of how those users interact with an online property from multiple browsers and

multiple devices. For example, [one] can see how users browse products on [a] site from a phone, and later return to complete purchases from a tablet or laptop.'" *Id.* ¶ 57 (quoting Google).

*Second*, Defendant enables Google to identify individual Website users with the Google Analytics identity spaces. *Id.* ¶ 155, 171, 175. "[T]he Google Analytics identity spaces … rely, at least in part, on Google cookies." *Id.* ¶ 71. According to a 2024 archive of the Google for Developers website, Google cookies allow Google Analytics to "'remember' what a user has done on previous pages [and their] interactions with the [W]ebsite." *Id*. Such cookies include an "'ID used to identify users'" (*id.* ¶ 81) and "'[t]argeting cookie[s u]sed to create a user profile and display relevant and personalised Google Ads to the user[.]'" *Id.* ¶¶ 77, 80.

Thus, this case does not concern mere anonymous website traffic. MTD at 12. Given Google's ability to associate data with logged-in Google accounts, the data is individually identifiable. Despite Defendant's attempt to rely on *Gay v. Garnet Health*, that case in fact favors Plaintiff because the court found analogous tracking of appointment scheduling and patient portal interactions sufficient. 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024). And as discussed *supra*, Defendant's argument that the information was not in "plain English" fails. MTD at 13.

## III. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER CIPA CLAIM

### A. Plaintiff Adequately Alleges Violations Of The Second, Third, And Fourth Clauses Of CIPA § 631(a)

CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978)." Plaintiff alleges that Google violated the second and third clauses of CIPA § 631(a) by "reading" or "learning the contents" of Plaintiff's communications "in transit" (the second clause) and using that information for their own purposes (the third clause). *See* FAC ¶¶ 52-57. And Plaintiff alleges

Defendant violated the fourth clause of CIPA § 631(a) by "aid[ing], agree[ing] with, employ[ing]" or otherwise enabling the Third Parties' aforementioned CIPA violations. *Id.* ¶¶ 58-69.

Defendant contends "the Complaint does not sufficiently allege conduct in California[.]" MTD at 14; *see also id.* at 23. But when Defendant aided and employed Google in intercepting the contents of Plaintiff's communication, this conduct took place in California.

"The Ninth Circuit has construed the term intercept according to its ordinary meaning as the act of acquiring, or coming into possession of. … Such acquisition occurs when the contents of a [] communication are captured or redirected in any way." *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *5–6 (C.D. Cal. Nov. 20, 2023) (internal quotation marks omitted) (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022); *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009)). The capture and/or redirection of communications occurs geographically at the situs of the wiretapped party, herself. *See, e.g.*, *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006) (interpreting the federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*[2] accordingly and finding, *inter alia*, "interception occurs where the tapped phone is located"); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130-31 (3d Cir. 2022) (interpreting Pennsylvania's wiretapping statute and finding that "[e]lectronic communications are ... 'intercepted' when software reroutes communications to an interceptor"; thus, "[the interceptor] intercepted [plaintiff's] communications at the point where it routed those communications to its own servers. And that was at [plaintiff's] browser, not where the signals were received at [the interceptor's] servers."); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *13, 13 n.5 (N.D. Cal. Apr. 11,

[2] Note, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) (citation omitted).

2024) ("[b]ecause wiretapping statutes are designed to protect the privacy interests of individual members, the residences of the individuals are more important to the respective sovereign than the residence of the alleged wrongdoer."); *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 610–11 (2020), *as modified on denial of reh'g* (Oct. 23, 2020) ("Pen. Code, § 632 applies to conversations between a California resident and a nonresident corporation located outside California[.]") (cleaned up); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119-20 (2006) (examining "the issue [of] whether the [CIPA] was intended to apply when one party to a telephone call is in California and another party is outside California" and finding appropriate "application of the statute in a setting in which a person outside California records, without the Californian's knowledge or consent, a telephone conversation of a California resident who is within California.").

Here, the contents of the communications at issue were captured and/or redirected in California, so they were intercepted in California. Plaintiff (a California resident) alleges that her communications on the Website were intercepted by Google (headquartered in California),[3] when she accessed the Website **from California**. *See* Compl. ¶ 7, 9 ("Plaintiff Sawer was in California when she visited the Website. … [A]s a result of Defendant's unlawful conduct as alleged herein, third-party Google intercepted information about the therapy consultations Plaintiff … scheduled on the Website[.]").

Defendant next argues that Plaintiff fails to allege that Google read and intercepted the communications while in transit. *See* MTD at 15-16. But "[w]hile a plaintiff must do more than 'merely restate[ ] the pleading requirement of real time interception,' the standard is not overly

[3] *See* Declaration of Philip L. Fraietta ("Fraietta Decl."), Ex. 1 (Statement of Information from the California Secretary of State website pertaining to Google LLC).

burdensome." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (citing *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024)). "[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Id.* (citing *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024); *see also St. Aubin*, 2024 WL 4369675, at *7 (explaining that "the key to the interception analysis is whether the plaintiff alleges that transmission was simultaneous")). Moreover, "[a]t the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured." *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024). "A pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). Plaintiff thus meets her burden here.

Defendant's reliance on *Doe v. Eating Recovery Center, LLC* does not change this result. In *Doe*, the Court reached its conclusion on a motion for summary judgment before a full factual record. 2025 WL 2971090, at *7 (N.D. Cal. Oct. 17, 2025); *see also Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (same). At the pleading stage, Plaintiff has done more than enough to support her allegations that Google intercepted Plaintiff's communications while "in transit." *See* FAC ¶ 52. Plaintiff even highlights the network traffic between Defendant and Google, which illustrate the interceptions at issue here. *Id.* ¶¶ 58-69. These illustrations show that Google is able to learn the meanings of the communications while they are in transit. *Id.* At the pleading stage, nothing more is required.

*See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 961-62 (N.D. Cal. 2023); *Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4.

Defendant argues that the party exemption applies here because "Google Analytics is a tool and is not a third-party eavesdropper." MTD at 19. But whether Google is an independent third party, as Plaintiff alleges, or merely a passive tool is a "question of fact for a jury, best answered after discovery[.]" *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *3 (S.D. Cal. 2023). As such, the Court should not decide this issue at the pleading stage. *See Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *4-6 (C.D. Cal. 2023).

In any event, Plaintiff adequately pleads that Google is an eavesdropper rather than a recorder. Under *Valenzuela*, "the question is whether the third party has the capability to use its record of the interaction for [another] purpose. An eavesdropper has that capability. A tape-recorder (absent an operator) does not." 674 F.Supp.3d at 758 (emphasis in original; internal quotations omitted). Importantly, and contrary to Defendant's assertions that Plaintiff has failed "to allege sufficient facts that Google is a third-party eavesdropper," MTD at 18, the "capability" approach does not require that the SaaS provider actually use the data for another purpose in the instant action, only that the SaaS provider can do so. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (SaaS provider was a third party where "Active Prospect can use that information for other purposes, even if Javier has not alleged that they have done so in this case").

Here, Google, through Google Analytics, "uses the information shared by sites and apps to deliver [their] services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you

see on Google and on our partners' sites and apps." FAC ¶ 86. These functions extend beyond the ordinary secondhand repetition function of a tape recorder. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also, e.g.*, *Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Javier pleads that ActiveProspect monitors, analyzes, and stores information about visits to Assurance's websites"); *Tate v. Vitas Healthcare Corp.*, 762 F. Supp. 3d 949, 955 (E.D. Cal. 2025) (same where "Invoca's software effectively listens in on user calls, independently analyzes that data, and the company reserves the capability to then use that data for its own purposes") (cleaned up); *Ambriz v. Google, LLC*, 2025 WL 830450, at *3 (N.D. Cal. Feb. 10, 2025) (same); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024) (same where defendant may use and store content to develop and improve its services); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951-52 (N.D. Cal. 2024).[4]

### B. Plaintiff Adequately Alleges That Defendant Violated CIPA § 632

The facts of this matter are in accordance with the Legislature's intent when it enacted CIPA. At the time of the law's enactment, the California Legislature recognized "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. Further, as recognized by the California Supreme Court, the intent of CIPA is to protect the right of Californians to control who does and does not get to learn the content of their communications. *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985). When consumers communicate with a business, they expect to only communicate with that company. Consumers *do not* expect that company to

[4] Defendant's reliance on *Mike Goldstein v. Rumble Inc.*, 2025 WL 3691987, at *4 (C.D. Cal. Nov. 6, 2025) is thus misplaced. *See* MTD at 19. Here, Plaintiff has explained in "factual detail" (*Goldstein*, 2025 WL 3691987, at *4) that Google has the ability to use wiretapped data for Google's own purposes, by referring to Google's own terms of service. *See* FAC ¶ 86.

aid, agree with, employ, and conspire with completely separate third parties in secretly listening to, receiving, and accessed those communications.

Contrary to Defendant's argument, it is well established that trackers like Google Analytics are devices under CIPA. *See Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 40 (S.D.N.Y. 2025) ("the Trackers qualify as a 'device or process' because they constitute 'software that identifies consumers, gathers data, and correlates that data.' (Amended Compl. ¶¶ 38, 47, 56) (quoting *Greenley v. Kochava*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023)."); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) (agreeing "that [] Pixel software is a device under section 632(a)" and distinguishing cases where software was not considered to be a device); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1200 (N.D. Cal. 2024) (acknowledging plaintiff's assertion that Google Analytics is a device and denying dismissal of plaintiff's CIPA claim). To the extent Defendant relies on *Moss v. ResortPass Inc*, its reliance is misplaced because the software discussed was "[s]oftware like Google Maps, Chrome," rather than the tracking technology at issue here. 2025 WL 3452360, at *2 (Cal.Super. Oct. 30, 2025).

Defendant argues that Plaintiff's information is not confidential because it is not personally identifiable. MTD at 21-22. Aside from the information being personally identifiable, FAC ¶¶ 70-83, CIPA § 632 protects against "'intentional, nonconsensual recording' of communications 'regardless of the content of the conversation' involved or how parties choose to disseminate it thereafter." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) (citation omitted). "Rather, the inquiry is whether 'any party to the communication desires it to be confined to the parties thereto.'" *Id.* (citing Cal. Pen. Code § 632(c)). Plaintiff clearly alleges that she intended the communications be so confined. *See, e.g.*, FAC ¶¶ 10, 68.

Additionally, courts have routinely recognized communications to be "confidential" under CIPA § 632 when shown to be sensitive under applicable laws, regulations, or industry norms. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (finding communications confidential when protected by federal law); *Bernstein v. United Collection Bureau, Inc.*, 2013 WL 5945056, at *4 (S.D. Cal. Nov. 5, 2013) ("The conversation allegedly included … highly personal and private financial information[.] … Plaintiff has sufficiently alleged that he had a reasonable expectation the conversation would not be recorded.") (cleaned up); *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015) ("Plaintiff [] alleges that due to the personal and financial nature of the conversations with Defendants, Plaintiff had a reasonable expectation of privacy … Plaintiff has adequately stated a CIPA claim."); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199-1200 (N.D. Cal. 2024) ("[T]he cases Google relies on involved internet chats and emails, not sensitive financial information submitted to a tax preparation website. … Google intercepted communications that were confidential under Section 632."). The information at issue here is protected by HIPAA. *See* FAC ¶¶ 124-125.

### C. Plaintiff's Claims Are Timely

Plaintiff's amended complaint is also timely per California's "delayed discovery" rule. "Under California's delayed discovery rule, the statute of limitations does not start to run until the plaintiff discovers, or has reason to discover, the cause of action." *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) (same). "To utilize the delayed discovery rule, the plaintiff 'must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Franklin*, 2018 WL

5923450, at *3. These factors can be met where "[t]he very nature of plaintiff's allegations is that the recordings were done surreptitiously." *Id.* Here, Plaintiff's claims are timely because she alleges Defendant's wiretapping and eavesdropping were carried out surreptitiously and without her consent. *See* FAC ¶¶ 91-97.

Defendant's argument that Plaintiff could have discovered the violation because Defendant disclosed its use of Google Analytics is of no moment. The privacy policy's mention of Google Analytics gave no indication that Plaintiff's private medical information was being disclosed to Google Analytics. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("If that user could have plausibly understood the disclosures 'as not disclosing that [the defendant] would engage in particular conduct,' then the disclosures are insufficient to establish consent."). To the contrary, Defendant states: "**We do not share any protected health information with Google Analytics**." Fraietta Decl., Ex. 2 (emphasis added). Thus the "polic[y] indicate[s] that the type of personal and healthcare information at issue here would not be shared with third parties" and "cannot, as a matter of law, preclude application of the discovery rule." *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024).

## II. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER CMIA CLAIM

### A. The Complaint Alleges the Conduct Occurred In California

In seeking to avoid CMIA liability, Defendant recycles its argument above, contending that Plaintiff does not allege the conduct occurred in California. MTD at 23. As discussed *supra*, the FAC alleges the harm occurred in California.

### B. Plaintiff Alleges The Disclosure Of Her Medical Information

Defendant next contends that Plaintiff's allegations are "conclusory," that "more information is needed to support a reasonable inference that medical information was disclosed,

intentionally shared, sold, used for marketing, or any other purpose, in violation of CMIA," and that the information at issue was not individually identifiable. MTD at 24. Not so.

The CMIA states that a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a). "'Medical information' means **any** individually identifiable information, in electronic or physical form . . . . regarding a patient's **medical history**, mental health application information, **mental or physical condition**, or **treatment**." Cal. Civ. Code § 56.05(i) (emphasis added).

California courts have interpreted the CMIA to require disclosure of individually identifiable information that has a substantive medical treatment nexus. *See, e.g.*, *Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*, 132 Cal. App. 4th 1466, 1472 (Cal. Ct. App. 2005) (distinguishing between disclosing that a person is a patient of a particular healthcare facility and disclosing the nature of the patient's treatment); *cf. Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430, 434-36 (Cal. Ct. App. 2014) (explaining that the compromised information amounted only to "individually identifiable information" because it did not show specific medical concerns or treatments). Thus, while the fact that a person was a patient at a particular facility may not communicate substantive information regarding a medical condition, treatment, or history, revealing the **nature** of the treatment, as is the case here, does. *Colleen M.*, 132 Cal. App. 4th at 1472.

*St. Aubin* is instructive. There, as here, the website at issue allowed patients to "book appointments to access medical care and manage their treatment or diagnosis of medical conditions." 2024 WL 4369675 at *1. The court found that the defendant had disclosed medical information as defined by the CMIA when the information disclosed included: "(1) the reason

patients booked a medical appointment and the location for those appointments; and (2) patients' identifiable information . . . that could be used to personally identify patients." *Id*. at *9.

So too here. Plaintiff alleges she visited the Website and "scheduled a consultation for individual therapy for herself." FAC ¶ 7. Plaintiff further alleges that in order to receive treatment via Defendant's Website, she had to select a condition as the reason for her appointment. *Id*. at 8. By embedding Google's tracking technologies into the Website, Defendant allowed Plaintiff's medical information, along with her name, email address and phone number to be disclosed to Google. *Id.* ¶ 9. The information disclosed included Plaintiff's responses to the approach they want their provider to take in therapy (e.g., confronting trauma), preferences as to their provider's identity (i.e., their provider's faith, gender, race, and/or sexuality), where they are seeking therapy, whether they are seeking virtual or in-person care, how they plan to pay, the name of the provider with whom they select to book a consultation. *Id*.

This case is more similar to *St. Aubin*, 2024 WL 4369675, at *2, and *Marden v. LMND Med. Group, Inc.*, 2024 WL 4448684, at *4 (N.D. Cal. July 3, 2024), where the nature of the medical treatment was disclosed, than *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal,. 2024), where the disclosure of such information was not alleged. MTD at 24. As discussed *supra*, Defendant's argument that the sensitive medical information intercepted was not individually identifiable fails.

Defendant cites *Cousin v. Sharp Healthcare* for the proposition that the does not allege facts to allow for an inference that Google actually viewed or accessed Plaintiff's PII or PHI. 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023). Improper access is defined as "permit[ing confidential medical information] to escape or spread from its normal place of storage." *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 210 (2022). Plaintiff does not only allege the

ability of an unauthorized party to access the information but that Google in fact did intercept her confidential medical information without consent. *See* FAC ¶ 8.[5]

## III. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER INVASION OF PRIVACY CLAIM

Finally, Defendant argues Plaintiff's claims for violation of the California Constitution's right to privacy fails. MTD at 26-27. It is Defendant's argument that fails.

To state a claim for invasion of privacy, Plaintiff must allege: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. Plaintiff has done so.

Defendant's cursory contention that the "Complaint fails to allege why the presence of Google Analytics was highly offensive" (MTD at 26) is wrong. As described above, Plaintiff alleges the type of therapy she sought, area she wanted to focus on, preferred therapy approach, preferred provider faith, gender, racial, and sexual identities, preferred location, method of payment, name of her provider, and the fact that she actually booked a consultation were all intercepted. FAC ¶ 9. These categories of information are highly sensitive.

"It is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Plaintiff properly pleads a specific legally protected privacy interest — namely, an interest in: "(1) precluding the dissemination and/or misuse of [her] sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites

[5] Plaintiff brings her CMIA claim under Cal. Civ. Code § 56.10. Plaintiff seeks damages under § 56.36 only in the alternative.

without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent." FAC ¶ 179. Therefore, Plaintiff has alleged a specific privacy interest in her medical information.

Further, Defendant ignores a host of recent cases that have held that surreptitious data collection meets the "highly offensive" requirement — even when the data at issue was only browsing data, as opposed to the highly-sensitive health information at issue here. *See, e.g.*, *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (holding the interception of browsing data was highly offensive given that Google "set an expectation that it would not save plaintiffs' activity on apps") (internal quotations omitted); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1079-80 (N.D. Cal. 2021) (finding the data collections to be highly offensive because Google's "representations regarding private browsing mode could have led users to assume that Google would not view their activity when in private browsing mode"); *Calhoun v. Google LLC*, 526 F. Supp. 3d at 631 (N.D. Cal. 2021) (finding Google's actions highly offensive because Google's "representations regarding Chrome's sync function could have led users to assume that Google would not receive the personal information at issue . . . while unsynced").

Given that this case involves the disclosure of sensitive health information, it is nonsensical for Defendant to contend that the wiretapping of such information would not be highly offensive. *Regents*, 672 F. Supp. 3d at 820 ("Personal medical information is understood to be among the most sensitive information that could be collected about a person."); *In re Ambry Genetics Data Breach Litigation* 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) (even negligent disclosure of medical information is "more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'"); *Stasi v. Inmediata Health Group Corp.* 501 F.

Supp. 3d 898, 926 (S.D. Cal. 2020) (disclosure of medical information "constitutes a serious invasion of privacy").

## IV. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER INTRUSION UPON SECLUSION CLAIM

Defendant argues New York law applies to Plaintiff's intrusion upon seclusion claim, but this is a California resident's claim arising from conduct in California concerning California statutes. The interest analysis therefore strongly favors California law. As one court in this circuit has recognized, "[e]ven if the defendant is in a different state from the records he wrongfully accesses, § 152 of the Restatement still points back to the plaintiff's location at the time as the 'place of invasion.'" *Stehl v. Cretella*, 2026 WL 555085, at *5 (D. Conn. Feb. 27, 2026). Regardless, even under New York law, Defendant's argument that Plaintiff "voluntarily" used the website is misplaced. MTD at 28. Voluntary use of a website does not constitute consent to covert third-party interception of sensitive health data.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss. To the extent the Court grants the motion to dismiss, Plaintiff respectfully requests leave to amend.

Dated: April 14, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Philip L. Fraietta</u>*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (*pro hac vice*)
6 Carriage Lane
Highwood, IL 60040
Telephone: (312) 358-8225
Email: Scott@drurylegal.com

*Attorneys for Plaintiff*

**CERTIFICATION**

I, Philip Fraietta, hereby certify that the foregoing Memorandum of Law complies with Local Civil Rule 7.1 in that the total number of words in this Memorandum of Law, exclusive of the caption, table of contents, table of authorities, and the signature block, amounts to 8,491 words and therefore does not exceed the 8,750 word count limit.

*/s/ Philip L. Fraietta*
Philip L. Fraietta